STATE OF NEW JERSEY, ON COMPLAINT OF HARRY LIEF, PLAINTIFF-PROSECUTOR, v. PACKARD-BAMBERGER & CO., INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

Argued January 19, 1939—Decided September 16, 1939.

Before Justices CASE, DONGES and PORTER.

For the prosecutor, *Pesin & Pesin.*

. For the respondent, *Losche & Mounier.*

The opinion of the court was delivered by

DONGES, J.   A writ of *certiorari* was allowed to review the action of the District Court of the Third Judicial District of the county of Bergen in dismissing a complaint alleging violation of section 2 of chapter 394 of the laws of 1938 (*Pamph. L.* 1938, *p.* 976) entitled:

"An act to insure and protect fair trade practices in distribution, defining such practices, prohibiting the advertisement, offer for sale or sale of merchandise at less than cost, and fixing penalties for the violation thereof."

Section 2 provides:

"It is hereby declared that the advertisement, offer for sale, or sale of any merchandise at less than cost by retailers is prohibited."

The act defines cost to the retailer in the first section thereof as follows:

"(a) 'Cost of the retailer' shall mean the total consideration necessary for the replacement of the merchandise to the retailer at the retail outlet, such consideration to be determined by applying to said merchandise the same cost per unit as the last quantity purchased by the retailer prior to the sale

of the said merchandise would have cost per unit if bought at the most favorable market price available to the retailer at any time within thirty (30) days prior to the said sale less any customary trade discounts, but exclusive of discounts for cash, display allowances and unearned discounts for volume."

"(c) 'Cost to the retailer' and 'cost to the wholesaler' must be *bona fide* costs and sales to consumers, retailers and wholesalers at prices which cannot be justified by existing market conditions within this state shall not be used as basis for computing costs with respect to sales by retailers and wholesalers.

"(d) 'Sell at retail' and 'sales at retail' shall mean any transfer of title to tangible personal property for a valuable consideration where such property is to be used by the purchaser for purpose other than resale, manufacture or further processing. The above terms shall also include any such transfer of property where title is retained by the seller as security for the payment of the purchase price."

"(f) 'Retailer' shall mean and include every person, firm, corporation or association engaged in the business of transferring title within this state to tangible personal property for a valuable consideration where such property is to be used by the purchaser and is not to be resold or used for the purpose of manufacture or further processing."

In the eighth section, certain kinds of sales are exempted from the provisions of the act. These are, with the exception hereafter noted, clearance sales, sales under judicial proceedings and for charity. The act applies to all other sales of merchandise by retailers.

Respondent asserts and the court below held the act to be unconstitutional. No statement of facts appears in the record. The motion was addressed to the sufficiency of the complaint as having no valid statute to support it. The complaint alleges that defendant did "on or about the 7th day of July, 1938, and at other times subsequent thereto, violate section 2 of chapter 394 of the Pamphlet Laws of 1938 of the State of New Jersey, in that they did on or about such date advertise, offer for sale and sell merchandise consisting of groceries

at less than cost to them, within the meaning and intendment of said law."

Regarding the propriety of the action of an inferior court such as the District Court in declaring a statute unconstitutional, we direct attention to the statement of Mr. Justice Parker in *Legg* v. *County of Passaic,* 122 *N. J. L.* 100, as the guide for courts of inferior jurisdiction. However, because of the importance of the matter to the public, we pass all other questions raised and take up the question of the validity of the statute.

It will be observed that the statute is very broad in its application to sales of merchandise. By its terms, it applies to every person or group "engaged in the business of transferring title to personal property for a valuable consideration where such property is to be used by the purchaser." Costs to such retailer are established in subdivision (a) of section 1, with limitations in subdivision (c). An exemption in section 8 is created where the price of merchandise is made to meet the "legal price" of a competitor.

In *Wilentz, Attorney-General,* v. *Crown Laundry Service, Inc.,* 116 *N. J. Eq.* 40; 172 *Atl. Rep.* 331, Vice-Chancellor Bigelow admirably stated the law. He said:

" 'Statutes in derogation of common law rights are to be strictly construed, and we are not to infer that the legislature intended to alter the common law principles further than is clearly expressed, or than the case absolutely required.' *Tinsman* v. *Belvidere Delaware Railroad Co.,* 26 *N. J. L.* 148, 167; 69 *Am. Dec.* 565. No common law right has been more firmly established or more treasured than the right of the individual to sell his goods or his services at whatever price he and the purchaser might agree upon. Indeed, a few years ago every court in the land would have held that a statute abrogating that right, except in the case of a business or property affected with a public interest, would deprive the individual of his property without due process of law, and therefore be void. *Tyson* v. *Banton,* 273 *U. S.* 418; 47 *S. Ct.* 426; 71 *L. Ed.* 718; 58 *A. L. R.* 1236; *Rignik* v. *McBride,* 277 *U. S.* 350; 48 *S. Ct.* 545; 72 *L. Ed.* 913; 56 *A. L. R.* 1327; *Williams* v. *Standard Oil,* 278 *U. S.* 235;

49 *S. Ct.* 115; 73 *L. Ed.* 287; 60 *A. L. R.* 596. Doubtless judicial conceptions of the power of the legislature to restrict the individual's liberty of contract have been undergoing a change in recent years. *Nebbia* v. *People of State of New York,* 291 *U. S.* 502; 54 *S. Ct.* 505; 78 *L. Ed.* 940; 89 *A. L. R.* 1469. Doubtless legislative power, usually dormant, may be recalled to activity by the stress of the times. *Home Building and Loan Association* v. *Blaisdell,* 290 *U. S.* 398; 54 *S. Ct.* 231; 78 *L. Ed.* 413; 88 *A. L. R.* 1481. But, even granting to the legislature the utmost power which has been claimed for it, it must still be conceded that the exercise of such power requires explicit, unambiguous language.  \*  \*  \* 'Fair competition,' the only authorized subject of the code, may be taken as the opposite of 'unfair competition,' a term which has long been employed by the courts. It has generally been understood to mean a form of competition involving deception of the public as by the imitation of trade names, labels, &c. The United States Supreme Court, referring to the Federal Trade Commission act (15 *U. S. C. A.,* ¶¶ 41 *et seq.*) has said: "The words "unfair method of competition" are not defined by the statute and their exact meaning is in dispute. It is for the courts, not the commission, ultimately to determine as matter of law what they include. They are clearly inapplicable to practices never heretofore regarded as opposed to good morals because characterized by deception, bad faith, fraud, or oppression, or as against public policy because of their dangerous tendency unduly to hinder competition or create monopoly. The act was certainly not intended to fetter free and fair competition as commonly understood and practiced by honorable opponents in trade." *Federal Trade Commission* v. *Gratz,* 253 *U. S.* 421; 40 *S. Ct.* 572, 575; 64 *L. Ed.* 993; *Federal Trade Commission* v. *Raymond Bros.-Clark Co.,* 263 *U. S.* 565; 44 *S. Ct.* 162; 68 *L. Ed.* 448; 30 *A. L. R.* 1114. Price cutting, by itself, has never been considered unfair competition. *Sears, Roebuck* v. *Federal Trade Commission* (*C. C. A.*), 258 *Fed. Rep.* 307; 6 *A. L. R.* 358."

In the act under consideration there is no limitation to transactions which involve commodities affected with a public

interest, or to those which may be designed to injure competitors or destroy competition. In this enactment, we find an absolute prohibition of sale "below cost," with punishment therefor, regardless of intent, purpose, or effect upon fair trade. Just how that cost is to be determined under this act is not clear. Indeed, subdivision (a) of article 1 attempts to establish a standard for determining cost, and subdivision (c) of the same article withdraws that standard by declaring that "prices that cannot be justified by existing market conditions shall not be used." By what rule justifiable market conditions are to be determined does not appear. As above stated, section 8 provides: "The provisions of this act shall not apply to sales at retail or sales at wholesale * * * (e) where the price of merchandise is made to meet the legal price of a competitor for merchandise of the same grade, quality and quantity." How a person is to determine the legality of the price of a competitor is not declared, and the impracticability, if not the impossibility of determining the "legality" of a competitor's price is obvious.

The constitutional guarantees of our Bill of Rights give to everyone the right of acquiring and possessing the absolute title to property, with all rights incident thereto, and, as an incident of personal liberty, the right to dispose of such property in such innocent manner as he pleases, and to sell it at such price as he can obtain in fair trade. *State* v. *Ruback*, 281 *N. W. Rep.* 607.

Keeping in mind the undoubted right to possess and fairly dispose of property, and that the sale of groceries herein involved is in no manner affected with a public interest, does this act define an offense? What is sought to be accomplished by this act? There is no requirement of criminal or illegal intent or purpose. Indeed, the act may be violated without guilty knowledge. A retailer may not only ordinarily not sell below cost to him, but, if he seeks to meet competition, he must expertly study and determine that he is buying under market conditions that are justified, or that the price of a competitor, which he must meet, is "legal." It is apparent that the statutory inhibitions are uncertain and indefinite. The elements of the proscribed conduct it attempts to penalize

are not so clearly expressed that a person is informed of the course it is lawful for him to pursue. Action against an alleged offender thereunder would be arbitrary and unreasonable.

In *Fairmount Creamery Co.* v. *Minnesota,* 274 *U. S.* 1, 10; 47 *S. Ct.* 506, 508; 71 *L. Ed.* 893; 52 *A. L. R.,* it was said: "It is not permissible to enact a law which, in effect, spreads an all inclusive net for the feet of everybody, upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught.

"As the inhibition of the statute applies irrespective of motive, we have an obvious attempt to destroy plaintiff in error's liberty to enter into normal contracts long regarded not only as essential to the freedom of trade and commerce, but also as beneficial to the public."

In *Connelly* v. *General Construction Co.,* 269 *U. S.* 385; 46 *S. Ct.* 126, it was said:

"The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon one conception of its requirements and the courts upon another.

"In creating an offense which was not a crime at common law, a statute must of course be sufficiently certain to show what the legislature intended to prohibit and punish, otherwise it will be void for uncertainty. Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible; but when the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite that it may embrace not only acts commonly recog-

nized as reprehensible but also others which it is unreasonable to presume were intended to be made criminal, the statute will be declared void for uncertainty." 16 *C. J.* 67.

"The test to determine whether a statute defining an offense is void for uncertainty (1) is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences, thereby devolving on the court the exercise of arbitrary power of discriminating between the several classes of acts. *Czana* v. *Board of Medical Supervisors,* 25 *App. D. C.* 443. (2) The dividing line between what is lawful and what is unlawful cannot be left to conjecture. *United States* v. *Capital Traction Co.,* 34 *App. D. C.* 592; 19 *Ann. Cas.* 68; *United States* v. *Washington R. & E. Co.,* 34 *App. D. C.* 599." 16 *C. J.* 68.

The California case of *Wholesale Tobacco Bureau* v. *National Candy and Tobacco Co.,* 82 *Pac. Rep.* (2d) 3, is cited and relied upon by prosecutor, but we think the reasoning of that case is inapplicable because of a material difference between the California statute there under consideration and our statute. The California statute prohibited the sale of articles at less than cost or the giving away of articles "for the purpose of injuring competitors and destroying competition," and the court held that this intent clause applied to both sales and gifts of articles. The court said: "It must be borne in mind that this statute does not regulate the selling of commodities—it is the predatory trade practice of selling below cost with intent to injure competitors which the legislature on reasonable grounds has determined is vicious and unfair that is prohibited." And further: "The statute embodies the concept that sales made at a loss to the seller, when made for the purpose of injuring or destroying competition, are predatory and anti-social in character. The economic wisdom of such a concept may be debatable, but being debatable, the legislature is empowered to choose between its acceptance or rejection. The statute, so far as the facts here involved are concerned, goes no further than reasonably necessary to effectuate that choice." The court further said: "It would certainly add to the weight of appellant's argument on the

main issue if the statute omitted intent as an integral part of the act prohibited. It is one thing, from a legal standpoint, to prohibit sales below cost engaged in for the purpose of injuring competitors and destroying competition, and quite another to merely prohibit all such sales regardless of intent. It may well be that an absolute prohibition regardless of intent would be unreasonable." Citing *Fairmount Creamery Co.* v. *Minnesota, supra.*

Prosecutor also relies upon *Rust* v. *Griggs* (*Sup. Court of Tennessee*), 113 *S. W. Rep.* (2d) 733, but in that case the statute was upheld because it was designed to prohibit only sales made with wrongful purpose or with intent to destroy competition and injure competitors. Likewise, in *State* v. *Langley,* 84 *Pac. Rep.* (2d) 767, the Supreme Court of Wyoming, in passing upon a statute of that state, dealing with a plea of guilty to a sale of merchandise below cost for the purpose of injuring a competitor and with the intent to stifle competition, put its decision upon the ground that the statute "condemns acts committed with intent (a) to injure competitors and (b) to destroy competition."

The case of *State* v. *Ruback,* 281 *N. W. Rep.* 607, is more nearly like the instant case. There the Supreme Court of Nebraska declared void a statute making it a misdemeanor to sell or give away, or advertise for sale any article at a price which "may lessen, injure, destroy or prevent, hinder or suppress the competition of competitors." The court held that there was "no definition of criminal intent, or of evil or criminal purpose or of guilty knowledge."

In the case presently pending, there is no definition of wrongful intent or purpose to limit fair competition or to inflict injury upon anyone. Indeed, intent or motive or the existence of injury to anyone are not essential to punishment under this act. As above stated, guilt may obtain without knowledge of the violation of any of its provisions. A person might believe he was complying with the provisions of this act in all respects, and find himself guilty of its violation because he purchased goods at a price not justified by market conditions, of which he was unaware, or that he met the price of a competitor, believing such price to be a lawful one, when it was not a "lawful price."

We conclude that the legislative act under consideration does not relate only to the sale of commodities affected with a public interest, as in *Nebbia* v. *New York, supra,* and other decisions of various courts; that it does not define any public harm or damage to be averted, such as the giving of trade inducements or committing other acts to lessen competition or injure competitors or the stifling of fair competition by other forms of price discrimination. It does not anywhere exhibit a purpose to accomplish a valid object. It arbitrarily imposes restrictions upon trade, when no injury is inflicted thereby and without resultant benefit to anyone.

To give effect to this act would be to deprive the respondent of its property without due process of law, in violation of its constitutional rights.

The writ is discharged, with costs.