

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS          May 16, 1957

**WILL WILSON**
**ATTORNEY GENERAL**

Honorable W. S. Heatly, Jr.
Chairman, State Affairs Committee
House of Representatives
Austin, Texas

<div style="margin-left:2em">

Opinion No. WW-123

Re: Constitutionality of
House Bill 25 and Senate
Bill 177, known as the
"Sales Limitation Act."

</div>

Dear Mr. Heatly:

With respect to your request for an opinion on the constitutionality of the proposed "Sales Limitation Act" incorporated in House Bill 25 and Senate Bill 177, we submit the following:

In essence these identical Bills provide a definition of the "cost basis" of products sold in the course of wholesale and retail business and prohibit the sale, or the advertising or offering for sale, of any item of merchandise at less than cost when the seller limits, or reserves the right to limit, any purchaser to a quantity less than the entire supply of that item. A similar Act was held unconstitutional in San Antonio Retail Grocers v. Lafferty, 297 S.W.2d 813 (Tex. Sup. Ct. 1957) on the grounds that by limiting its effect to grocery stores alone, it provided an unreasonable and arbitrary classification. The constitutional impediment found by the court in the Lafferty case has been removed in these Bills since they are applicable to all sales in the course of business. It is necessary, therefore, to consider in this opinion questions not reached in the Lafferty case.

The purpose of the Bills as evidenced by the emergency clause is to "protect retailers and wholesalers, and the consuming public, against monopolistic practices designed to lessen or destroy competition in the ordinary purchase and sale of commodities." Such a purpose is a legitimate object for the exercise of the police power, and statutes prohibiting sales below cost when such sales are intended to injure competition or when they have that effect, have generally been held to be valid legislative methods for the accomplishment of this purpose. See cases collected in annotations at 118 A.L.R. 506 and 128 A.L.R. 1126.

The principal difficulty with the proposed Sales Limitation Act is that though its stated purpose is the elimination of practices "designed to lessen or destroy competition," the operative provisions are not limited to situations where limited sales are made with an intent to injure competition or where that effect is achieved. This intent or effect has been a part of every statute upheld by the courts of other jurisdictions, and in many cases the courts have considered such an element to be an essential ingredient to validity. See e.g. Blum v. Engleman, 190 Md. 109, 57 A.2d 421 (1948); Associated Merchants v. Ormesher, 107 Mont. 530, 86 P.2d 1031 (1939); Wholesale Tobacco Dealers Bureau v. National Candy & Tobacco Co., 11 Cal.2d 634, 82 P.2d 3 (1938). Only two cases have been found where the statute before the court did not require a wrongful intent or an injurious effect, and in each the statute was held to be violative of due process requirements for that reason. Commonwealth v. Zasloff, 338 Pa. 457, 13 A.2d 67 (1940); State ex rel Lief v. Packard-Baumgardner & Co., 123 N.J.L. 180, 8 A.2d 291 (1939). The basis for this holding was well expressed by the Pennsylvania Supreme Court in the Zasloff case as follows:

"If the Act confined itself to prohibiting sales below cost when intended to destroy competition, it would undoubtedly be valid, as has been held in various jurisdictions where such acts have been enacted with that qualification. (Citing cases) The opinions of the courts in those cases emphasized the fact that the statutes there under consideration made criminal only such sales as were designed for the suppression of competition or other predatory purposes, and the means employed by those statutes were therefore reasonably related to their objective. In New Jersey, on the other hand, where, as in Pennsylvania, this qualification was not in the act, the statute was declared unconstitutional. (Citing the Lief case) Price cutting in itself is not an evil; on the contrary, the more intense the competition the greater the likely advantage to the purchasing public. Indeed there is no reason why merchants should not make an absolute gift of merchandise to his customers if he desires to be benevolent or thereby to advertise his business. There are many other conceivable and wholly proper reasons which might induce him to make sales without profit, as, for example, a necessity of paying importunate creditors. It is only when the object of price cutting is sinister, -- to destroy a competitor by suffering a temporary loss in order to gain an ultimate monopoly..., or to defraud the public by seducing them into the purchase of other goods at an exorbitant price-- that the selling of goods at less than cost may constitute an economic or social evil. The Pennsylvania Act, therefore, is arbitrary, and the means which it employs are grossly out of proportion to the object which it seeks to attain."

We believe this reasoning to be applicable to the proposed Sales Limitation Act unless other features of the Bills are effective to exclude such lawful practices from their effect.

The proposed Act differs from the statutes before the courts in the above cases principally in that those statutes prohibited all sales below cost while in the instant Bills only sales below cost in limited quantities are within the reach of the statute. It has been argued that such a provision intensifies the invalidity of the statute rather than aiding its validity by providing an unreasonable classification in not prohibiting unlimited sales intended to destroy competition. It is, of course, quite possible that a powerful seller might make unlimited sales of his product below cost until his competitors are forced out of business, but it is believed that this argument overlooks the fact that it is not required that the Legislature prohibit all forms of unfair competition in order to reach specific abuses it considers to be threatening. As stated by the Supreme Court in Central Lumber Co. v. South Dakota, 226 U.S. 157, 33 S.Ct. 65 (1912):

> "If the Legislature shares the now prevailing belief as to what is public policy, and finds that a particular instrument of trade war is being used against that policy in certain cases, it may direct its laws against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed."

The problem, therefore, is not whether some classes of unfair competitors are excluded from the Bills, but whether the device of prohibiting only limited below cost sales removes from the statutory ambit those practices innocent of destructive intent or effect on competition referred to in the Zasloff case. No case has been found where this feature has been considered by a court, but it is apparent that, by removing unlimited sales from the Bill's prohibition, unquestioned fair methods of competition, such as sales below cost to clear inventories of slow-moving, damaged, imperfect or short stock, or to liquidate a business, are removed from the scope of the Bill.

However, it is also apparent that other legitimate competitive practices are still prohibited by the proposed Act. For instance, an attempt to attract business through "loss leaders" would seem to be as legitimate a competitive device as advertising, credit services, attractive surroundings and the like where there is no attempt thereby to monopolize the market. Furthermore, sales below cost made in good faith to meet competition do not appear to be adequately excluded by the proposed Act. Section 7

which purports to exclude such sales is ineffective for this purpose since it requires a business man to determine at his peril that the competing price is at cost or above before lowering his price to meet the competing price without providing any method whereby he can ascertain whether the competing price is lawful. See State ex rel Lief v. Packard-Baumgardner & Co., supra. We find no feature in the Act which would save such below cost sales which are not intended to injure competition from its effect, and we must conclude that the Bill as written is unconstitutional as violative of due process of law. Tex. Const. Art. I, Section 19; U.S. Const. 14th Amend. In view of our holding, it is unnecessary to consider other constitutional objections which have been raised against the Bill.

## SUMMARY

The proposed Sales Limitation Act incorporated in House Bill 25 and Senate Bill 177 violates the requirements of due process of law provided in Article I, Section 19, of the Texas Constitution, and the 14th Amendment to the U.S. Constitution, since it includes within its prohibition practices which are not reasonably related to its purpose of preventing unfair competition.

Very truly yours,

WILL WILSON
Attorney General of Texas

By James W. Wilson

James W. Wilson
Assistant

JWW:tiw

APPROVED:
OPINION COMMITTEE

H. Grady Chandler, Chairman

REVIEWED FOR THE ATTORNEY GENERAL
BY:

Geo. P. Blackburn