**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5649-18

NEW JERSEY DEPARTMENT
OF HEALTH,

     Petitioner-Respondent,

v.

CATHERINE BAWAK-OROCK,

     Respondent-Appellant.

_____

          Submitted January 6, 2021 – Decided March 1, 2021

          Before Judges Whipple, Rose and Firko.

          On appeal from the New Jersey Department of Health, Docket No. 17-11373.

          Law Offices of Jef Henninger, attorney for appellant (Jef Henninger, on the briefs).

          Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Francis X. Baker, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Catherine Bawak-Orock appeals from a July 29, 2019, final agency decision by the New Jersey Department of Health (DOH) finding abuse of a nursing home resident, placing her name on the New Jersey Nurse Aide Registry (Registry), and revoking her nursing aide certification. We affirm.

Appellant worked as a certified nurse aide (CNA) at the Kennedy Health Care Center[1] (facility) working the night shifts. During her twenty years as a CNA she was never previously disciplined and was described as reliable, patient, and playful with her residents.

This appeal arises from an incident that occurred October 25, 2017, when appellant was assisting one of her assigned residents, D.S., an eighty-seven-year-old woman suffering from dementia, hypertension, and sundowning, a condition that causes her to be very confused at night. Appellant was called by another CNA to report to the common bathroom to assist D.S., who had soiled herself. D.S. was uncooperative and yelling while appellant cleaned and changed her. A licensed practical nurse (LPN) who was employed at the facility heard yelling and went to assist. By the time the LPN got there, appellant was almost finished tending to D.S. The LPN assisted by restraining D.S.'s arms while appellant finished cleaning her. The LPN helped

---

[1] The facility is now called Jefferson Health Care Center.

A-5649-18

D.S. into her wheelchair while appellant discarded D.S.'s soiled sheets and clothes. Appellant was behind D.S., and the LPN was in front. While the LPN pulled the wheelchair out of the bathroom, appellant hit the back of D.S.'s head, causing it to thrust forward. The LPN directly observed appellant push D.S.'s head and told appellant to stop.

The LPN reported appellant's action to the Nursing Supervisor on duty. The supervisor questioned appellant about the incident, and appellant admitted that she "jokingly" hit D.S.'s head. Appellant demonstrated her action on the supervisor two times by standing in front of her and pushing her head. The supervisor then asked appellant to clock out and leave the facility immediately. The supervisor reported the incident and prepared a written statement about the events that same evening.

The security officer on duty was contacted by the supervisor to report to the unit where the incident occurred. He observed appellant's actions toward the supervisor. As the security officer was escorting appellant out of the facility, appellant demonstrated her action on the security officer, stating that what she did was not abuse and that D.S. was fighting with her. The security officer prepared a written statement at the end of his shift.

3

The matter was reported to the Director of Nursing at the facility. As director, she was responsible for investigating allegations of abuse and neglect. As part of the investigation, she was required to collect statements from everyone who may have encountered a resident who was allegedly abused or neglected. The director collected statements from the witnesses, but she did not collect one from D.S. because of the resident's condition. She also reviewed surveillance footage from the night of the incident.

The director knew appellant and had worked with her for six years; she knew appellant had a good rapport with the residents and appellant had never been the subject of an allegation of abuse. The director also knew D.S., and knew she was combative with staff and residents. However, the director explained that staff may use force only to prevent a resident from injuring themselves, and she concluded that the way appellant hit D.S. was inappropriate. The director substantiated appellant for abuse.

On December 5, 2017, DOH issued an order of summary suspension of appellant's nursing aide certification. Appellant requested a fair hearing. The matter was transferred to the Office of Administrative Law. On March 26, 2018, DOH notified appellant it intended to enter a finding of abuse, neglect,

4

and mistreatment of a nursing home resident next to appellant's name on the registry, and it revoked her nursing aide certification.

Hearings were conducted on December 19, 2018, and January 23, 2019. The record was closed on May 9, 2019.[2] On June 12, 2019, the Administrative Law Judge (ALJ) issued an initial decision that found abuse, neglect, and mistreatment, and the ALJ revoked appellant's nurse aide certification. On July 29, 2019, DOH issued a final agency decision adopting the findings of fact and conclusions of law contained in the initial decision. This appeal followed.

On appeal, appellant argues DOH's findings were not supported by substantial evidence; therefore, her conduct did not constitute abuse pursuant to Survey and Certification of Long-Term Care Facilities, Definitions, 42 C.F.R. § 488.301 (2017). Appellant argues that she did not inflict injury and that although her actions can be considered inappropriate, they do not constitute abuse. Appellant claims that D.S. said she was okay and wanted to wheel herself out of the bathroom and did not receive any treatment. Lastly, appellant contends she had a good rapport with her residents, was described as

---

[2] The initial decision misdates the record closing year as 2018 when it should be 2019, according to the chronology of the record.

a good worker by her colleagues, and her absence of prior allegations or reprimands should be given greater deference.

Our review of an administrative decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). We will not upset the ultimate determination of an agency unless shown that it was (1) arbitrary, capricious, or unreasonable; or (2) that it violated legislative policies expressed or implied in the act governing the agency; or (3) that the findings on which the decision is based are not supported by evidence. Brady v. Bd. of Review, 152 N.J. 197, 210-11 (1997). We afford substantial deference to an agency's "action provided it is consistent with the legislative grant of power." Lewis v. Catastrophic Illness Fund, 336 N.J. Super. 361, 369-70 (App. Div. 2001). Therefore, when an administrative agency interprets and applies a statute, it is entitled to great weight. Reck v. Dir., Div. of Taxation, 345 N.J. Super. 443, 448 (App. Div. 2001) (quoting Blecker v. State, 323 N.J. Super. 434, 442 (App. Div. 1999)).

The party challenging the decision bears the burden of establishing whether the agency's findings were supported by substantial evidence. Barone v. Dep't of Human Servs., 210 N.J. Super. 276, 285 (App. Div. 1986). The court must decide "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record considering 'the

6

proofs as a whole.'" In re Taylor, 158 N.J. at 656 (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). Further, we defer to the factfinder, who had the ability to observe the demeanor, tone, and physical actions of all the witnesses and appellant during the hearings. State v. Locurto, 157 N.J. 463, 474 (1999).

Here, the agency based its finding of abuse upon sufficient, credible evidence. The ALJ found the testimony of the LPN, the supervisor and the security guard all to be credible. The ALJ found the director's testimony to be credible, as she demonstrated a thorough understanding of the investigation and conducted herself professionally. The ALJ reviewed the surveillance footage from the facility produced by DOH. The footage is two minutes long and has the date stamp of the night the incident occurred.

Appellant conceded she struck D.S. on the back of her head, but said it was a joke. Prior to this incident, appellant never received any disciplinary action and had good rapport with her residents. Despite appellant's testimony, the ALJ found her not credible because appellant produced a written statement, which she prepared two days after the incident, that was inconsistent with her testimony. The written statement contradicts her testimony by indicating she may have held up her hands to protect herself from D.S., who was being

7

physically combative.  Thus, based on our review of the record and our deference to the credibility findings of the ALJ, we agree there is sufficient evidence in the record to support the ALJ's findings.

Appellant also argues her actions do not constitute abuse pursuant to 42 C.F.R. § 488.301.  We disagree.

Abuse is defined as "the willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting harm, pain, or mental anguish."  42 C.F.R. § 488.301; N.J.S.A. 52:27G-2(a).  This includes "verbal abuse, sexual abuse, physical abuse, and mental abuse including abuse facilitated or enabled through the use of technology."  42 C.F.R. § 488.301. Additionally, abuse includes "the deprivation by an individual, including a caretaker, of goods or services that are necessary to attain or maintain physical, mental, and psychosocial well-being."  Ibid.  The definition of abuse applies to "[i]nstances of abuse of all residents, irrespective of any mental or physical condition, [that] cause physical harm, pain, or mental anguish."  Ibid. Further, "willful" is defined as an individual acting "deliberately, not that the individual must have intended to inflict injury or harm."  Ibid.

Concerning nursing home residents, the legislature established as public policy that "residents and clients of health care facilities serving their

8

specialized needs and problems" are to be afforded "the same civil and human rights guaranteed to all citizens." N.J.S.A. 52:27G-1. A resident of a long-term care facility "has the right to be free from abuse, neglect, misappropriation of resident property, and exploitation." Freedom from Abuse, Neglect, and Exploitation, 42 C.F.R. § 483.12 (2016); N.J.A.C. 8:39-4.1(a)(5). They are entitled to be "treated with courtesy, consideration, and respect for the resident's dignity and individuality." N.J.A.C. 8:39-4.1(a)(12).

Nurse aides in licensed long-term care facilities must hold certifications demonstrating successful completion of the required training course, good moral character, and completion of a criminal background check. N.J.A.C. 8:39-43.2(a). Federal requirements for nursing facilities require each state to establish and maintain a registry of nurse aides. 42 U.S.C. § 1396r(e)(2)(A); Registry of Nurse Aids, 42 C.F.R. § 483.156(a) (2021); N.J.A.C. 8:39-43.7. The registry shall include specific findings by the state of resident abuse, resident neglect, or misappropriation of resident property by a nurse aide. 42 U.S.C. § 1396r(e)(2)(B); 42 C.F.R. § 483.156(c)(iv). When there is a finding of abuse, neglect, or misappropriation, the available remedies are revocation or suspension of a holder's certification. N.J.A.C. 8:39-43.5.

To determine whether abuse has been established, the burden of proof falls on the agency in enforcement proceedings to prove a violation or allegation. Cumberland Farms, Inc. v. Moffett, 218 N.J. Super. 331, 341 (App. Div. 1987). The agency in this matter, DOH, bears the burden by a preponderance of the evidence. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962). Evidence is preponderant "if it establishes 'the reasonable probability of the fact.'" Jaeger v. Elizabethtown Consol. Gas Co., 124 N.J.L. 420, 423 (Sup. Ct. 1940) (citation omitted). The evidence must "lead a reasonably cautious mind to the given conclusion." Bornstein v. Metro. Bottling Co., 26 N.J. 263, 275 (1958).

Striking a nursing home resident, even one who is combative, constitutes abuse. Here, as outlined in 42 C.F.R. § 488.301, injury does not need to be inflicted to constitute abuse. Appellant argues that her actions do not constitute abuse because she hit D.S. in a joking matter. This argument is unpersuasive.

Although appellant has a good reputation, the evidence presented supports a finding of abuse. We also recognize the penalty imposed is severe. However, the conduct herein goes against public policy enacted in N.J.A.C. 8:39-4.1(a)(12), which states long-term care residents are to be treated with

"courtesy, consideration, and respect."  They rely on the staff for their everyday needs.  Abuse or neglect inflicted upon them is intolerable.  Appellant's conduct goes against public policy of protecting this vulnerable population.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5649-18