BORDEN COMPANY, Plaintiff,

v.

Sidney J. McCRORY, Individually and in his capacity as Commissioner of Agriculture and Immigration of State of Louisiana, Defendant.

FOREMOST DAIRIES, INC., Plaintiff,

v.

Sidney J. McCRORY, Individually and in his capacity as Commissioner of Agriculture and Immigration of State of Louisiana, Defendant.

Civ. A. Nos. 2116, 2117.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
Jan. 7, 1959.

Montgomery, Barnett, Brown & Read, Walter M. Barnett, New Orleans, La., Joseph A. Greaves, Chicago, Ill., for plaintiffs.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, George M. Ponder, First Asst. Atty. Gen., N. Cleburn Dalton, Sp. Asst. Atty. Gen., Frank H. Peterman, Sp. Counsel to Atty. Gen., for defendant.

Before WISDOM, Circuit Judge, CHRISTENBERRY, Chief Judge, and WRIGHT, District Judge.

J. SKELLY WRIGHT, District Judge.

Plaintiffs are large manufacturers, processors and distributors of dairy products throughout the United States and in the state of Louisiana. They seek a declaratory judgment declaring Act 193 of 1958 [1] of the Louisiana Legislature null and void as violative of their rights under the Constitution of the United States as well as the Constitution of the State of Louisiana. Plaintiffs also pray for the issuance of temporary and permanent injunctions restraining the defendant, the Commissioner of Agriculture of the State of Louisiana, charged in Act 193 of 1958 with the enforcement thereof, from enforcing it. The case is before the Court at this time on the motion of plaintiffs for a temporary injunction.

Louisiana Act 193 of 1958, which is designated therein as the "Orderly Milk Marketing" Act, undertakes to regulate the processing, marketing, handling, and pricing of milk, milk products and frozen desserts throughout the state. It has as its alleged purpose, stated in its preamble, "to assure a full supply of fresh wholesome milk, including fluid milk, milk products and frozen desserts" and to prevent the economic destruction of farmers, plants, dealers and merchants as a result of trade practices of certain organizations financially strong enough to sell below their own costs, "which presents a situation detrimental to the health, welfare and economy of the people of this state."

A study of the Act discloses an attempt comprehensively to regulate the dairy industry in Louisiana. It provides for the fixing of minimum prices for milk products by the Commissioner provided two-thirds of the milk producers in a marketing area approve of the price fixed. It outlaws the selling of milk products below cost. It brands as disruptive trade practices which have been customary in the industry for years. It regulates the extension of credit and forbids normal discounts. And it provides criminal and civil sanctions against anyone who violates the Act and regulations promulgated pursuant thereto by the Commissioner.

1. LSA–R.S. 40:940.1 et seq.

Plaintiffs contend that their business is a property right and as such is entitled to protection against unconstitutional state legislation. They argue that the Act, in spite of the protestations in its preamble, is nothing but a thinly disguised attempt to eliminate price competition in the entire dairy industry, that it was sponsored by small dairies which cannot compete with twentieth century methods of production and distribution, that the Act gears the entire dairy industry to the problems of the small dairy to the detriment of the general public who have a right to clean, wholesome milk at a competitive price. Plaintiffs maintain that the so-called disruptive trade practices which the Act would make criminal are actually beneficial to the industry as a whole, particularly to the consuming public, that they are normal, usual and customary methods of operation practiced in the industry for years, that the purpose and effect of the so-called disruptive practices is to multiply the number of retailers who can offer milk products for sale under wholesome conditions at a competitive price, that unless the small retailers are assisted by these "disruptive practices," these small retailers will be unable to compete with the large supermarkets which do not require assistance from milk producers in the form of credit extension, cooling equipment and advertising display.

The plaintiffs also charge that the Act is so vaguely drawn, with particular reference to some of the definitions contained therein, that it would be impossible for reasonable men to agree on what the Legislature means and that misinterpretation of these vague provisions of the Act would subject them to the criminal and civil penalties provided therein.

The defendant, and many small dairies in the state appearing herein amicus, maintain that Act 193 of 1958 was intended by the Legislature to bring order out of chaos in the dairy industry, that small dairies have been unable to compete with large dairies with the result that many of them are going out of business, that the cause of these business failures has been the disruptive practices charged to the large producers, such as plaintiffs herein, and that an outlawry of these practices, as well as a minimum price for milk products, is necessary to prevent further business failures in the industry. They assert also that a case similar to the one in suit attacking the constitutionality of Act 193 of 1958 is on its way through the state courts, and that it would be improper for this Court to act in the premises until there has been a definitive interpretation of the Act by the Supreme Court of Louisiana.

There can be no question but that a state is free to adopt "whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose." Nebbia v. People of State of New York, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940. If the legislation adopted has a reasonable relation to the proper legislative purpose and is neither arbitrary nor discriminatory, it is safe from nullification by courts for "the Legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power." Nebbia v. New York, supra, 291 U.S. at page 537, 54 S.Ct. at page 516.

Nor can there be any question concerning the right of a Legislature to regulate competition, by price control or otherwise, in an industry which affects a large segment of the public. And again the wisdom of such regulation "is an economic question which this court need not consider or determine." Northern Securities Co. v. United States, 193 U.S. 197, 337, 338, 24 S.Ct. 436, 457, 48 L.Ed. 679. Unless such regulation is demonstrably arbitrary, discriminatory or irrelevant to the legislative purpose, there is no constitutional infirmity.

With these principles in mind, it is difficult, if not impossible, to determine the constitutionality of Act 193 of 1958 on the basis of the record made on application for temporary injunction. It is clear from that record, however, that this legislation seeks comprehensively to regulate the dairy industry in Louisiana to an extent not heretofore attempted. It outlaws practices which have been permitted in the industry for years. It appears to delegate legislative authority with respect to price fixing to private persons concerned with the industry. Compare Dr. G. H. Tichenor Antiseptic Co. v. Schwegmann Bros. Giant Super Markets, 231 La. 51, 90 So.2d 343, 60 A.L.R.2d 410. Many of its definitions, particularly that with respect to "costs," are difficult of discernment on the basis of the record as now made up. See Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284. The criminal and civil penalties provided certainly require a court carefully to study the provisions of the Act before permitting enforcement. Although the purpose of the Act is stated in its preamble, there is no legislative history indicating that any hearings of any kind were conducted by committees of the Legislature to determine the necessity or the advisability of this far-reaching legislation. Compare Nebbia v. New York, supra, 291 U.S. at page 516, 54 S.Ct. at page 507.

■ A trial on the merits may give this Court the answers to the questions which are now in its mind and may justify its declaring Act 193 enforceable. Until such a decision can be made, however, the irreparable damage which will be suffered by these plaintiffs and others similarly situated from the enforcement of the Act requires that the status quo be maintained. Polk Company v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6; Crockett v. Hortman, D.C., 101 F.Supp. 111. Moreover, under the Act, the cost of enforcement is provided by a tax levied on plaintiffs and other milk producers in Louisiana. Admittedly these taxes are nonrecoverable, except through an Act of the Legislature, for there is no provision under Louisiana law for paying the tax under protest and recovering the amount paid in the event it is later determined the exaction is illegal.

■ Where, as here, the questions presented by an application for a temporary injunction are grave and the injury to the losing parties will be certain and irreparable if the application be denied and final decree be in their favor, while if the injunction be granted, the injury to opposing parties, even if the final decree be in their favor, will be inconsiderable, the temporary injunction should be granted. Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972; Crockett v. Hortman, supra.

The decision here is not intended to influence in any way the determination of similar attacks on Act 193 of 1958 in suits now in progress in state courts. As a matter of fact, an interpretation of the statute by the Supreme Court of Louisiana will be most helpful to this Court, if and when this matter is considered on the merits on application for permanent injunction.[2] Since under Louisiana law the enforcement of this Act cannot be enjoined pending appeal in the state court,[3] in view of the gravity of the questions presented, this Court is taking the action indicated.

Decree for plaintiff.

2. See Government and Civic Employees Organizing Committee, C. I. O. v. Windsor, 353 U.S. 364, 366, 77 S.Ct. 838, 1 L.Ed.2d 894. Compare Leiter Minerals, Inc. v. United States, 352 U.S. 220, 229, 77 S.Ct. 287, 1 L.Ed.2d 267.

3. LSA–R.S. 13:4431.