**AIRPORT PARKING, INC., Plaintiff,**

v.

**NEW ORLEANS AVIATION BOARD,**
the City of New Orleans, Lock, Park
and Service Corporation, Defendants.

**Civ. A. No. 10071.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 19, 1960.

Marcus & Marcus, Walter F. Marcus,
Sr., Walter F. Marcus, Jr., New Orleans,
La., for plaintiff.

Hubert, Baldwin & O'Hara, Leon D.
Hubert, Jr., New Orleans, La., for de-
fendant, Lock, Park and Service Cor-
poration.

Alvin J. Liska, City Atty., Joseph H.
Hurndon, Asst. City Atty., Ernest L.
Salatich, Asst. City Atty., New Orleans,
La., for defendant, City of New Orleans.

Stahl & Sear, Morey L. Sear, New
Orleans, La., for defendant, New Orleans
Aviation Board.

J. SKELLY WRIGHT, District Judge.

This action arises out of a bitter con-
troversy between two corporations, each
of which claims to be the rightful holder
of the automobile parking concession at
Moisant International Airport near Ken-
ner, Louisiana. The plaintiff, Airport

Parking, Inc., who is the present concessionaire, seeks to enjoin the City of New Orleans, owner of the airport, and the Aviation Board of the City, operator of the facility, from granting a lease of the parking area to its rival, Lock, Park and Service Corporation. It asks for a judgment annulling any such purported grant already made, and declaring it the rightful leaseholder.

Disregarding the press and television notices concerning this matter which have been filed in the record, the following facts may be recited:

1. On April 14, 1960, the existing lease being about to expire, the Aviation Board, by public advertisements, invited sealed bids for the lease of the airport parking concession, with instructions that each bid must include a guaranteed minimum rental to the City of $75,000, together with a stated percentage, not to exceed 99.9%, of gross revenues received from the parking operations in excess of $110,000.

2. On April 29, the bids were opened, and of 13 bids received, five, including those of plaintiff, Airport Parking, and defendant, Lock, Park, were identical, in that each of them offered the City, in addition to the required minimum rental of $75,000, 99.9% of all gross revenues over $110,000.

3. On May 4, the Aviation Board unanimously adopted a resolution by which plaintiff, Airport Parking, was "designated the winning qualified bidder" and the Board "authorized and recommended to the City of New Orleans that a contract be entered into with [plaintiff]."

4. On May 12, the Council of the City of New Orleans, whose action on the Aviation Board's resolution was requested, declined to consider the question, and referred it to a subsequent meeting.

5. On May 18, the Aviation Board rescinded its earlier resolution and declared plaintiff "disqualified" as a bidder for the airport parking concession for the stated reason that it had failed to submit a current financial report as required under the bidding specifications.

6. On May 19, the City Council, upon being informed of the Aviation Board's disqualification of plaintiff and its absence of any other recommendation in the matter, adopted an ordinance "accepting the bid" of defendant, Lock, Park, and "authorizing the City of New Orleans to execute the necessary contract documents."

7. On May 26, at 10:05 A.M., on plaintiff's application, this court issued a temporary restraining order enjoining the City and the Aviation Board from entering into a contract with defendant, Lock, Park.

8. On the same day, at about 2:00 P.M., apparently before service of the restraining order, the Mayor, joined by the chairman of the Aviation Board, executed on behalf of the City of New Orleans a formal five-year lease of the airport concession to defendant, Lock, Park.

Such are the surface facts disclosed by the formal documents in the record. Obviously, there is much else behind this bare chronology that is material to the issues presented. Only a full disclosure through evidence adduced on the trial of the case can furnish a sound basis for resolution of the complicated questions this case presents. It is now possible, however, to outline at least some of the issues involved.

First. There is a serious question whether the initial action of the Aviation Board in declaring plaintiff the "winning bidder" amounted to the award of a binding lease contract. The determination of this question turns on two subsidiary ones: (1) Whether the Board purported to make a final award of the concession or merely recommend a choice to the City administration; and (2) If the former, whether the Board, as a matter of law, has such authority, or is, on the contrary, empowered only to make advisory recommendations.[1]

---

1. Tending to confirm this power in the Board, see LSA–R.S. 2:604(2), 2:605;

Home Rule Charter of the City of New Orleans (1954), § 5–702(1); Code of the

Second. The question arises whether the defendant, Lock, Park, now holds a valid lease by virtue of the ordinance adopted by the City Council, or the formal instrument executed by the Mayor, which, of course, depends in part on the answers given to the other questions already posed.

Third. Still more fundamental is the question whether either of the contending parties can obtain a valid contract under a system of bidding which, though nominally designed to allow the competing bids to determine the winner, in practice results in five equal bids, and actually permits the city officials to choose the successful bidder.[2]

Fourth. Finally, affecting, though not necessarily determining, the answer to the last question, is the issue whether there is or is not a legal requirement that leases or concessions of the type here involved be awarded by competitive bidding.[3]

■ A mere recitation of the questions presented for decision makes amply clear the need for a full disclosure of all relevant facts through a trial on the merits. In the meantime, it is proper that a temporary injunction issue to preserve the status quo.

■ Where, as here, the questions presented by an application for a temporary injunction are grave and the injury to the moving parties will be certain and irreparable if the application be denied and final decree be in their favor, while if the injunction be granted, the injury to opposing parties, even if the final decree be in their favor, will be inconsiderable, the temporary injunction should be granted. Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972; Crockett v. Hortman, D.C.W.D.La., 101 F.Supp. 111; Borden Co. v. McCrory, D.C.E.D.La., 169 F.Supp. 197.

■ However, because the City will otherwise lose important revenues, the temporary injunction will be conditioned upon plaintiff's paying for the airport parking concession the rental specified in the bids submitted by the five high bidders, retroactively to May 15, when its former lease expired. And, further, to protect defendant, Lock, Park, in the event of its ultimately succeeding, plaintiff will post a bond in the amount of $10,000.

Decree accordingly.

City of New Orleans (1956), §§ 4–5 (Ord. No. 15839 C.C.S.), 4–12–2 (Ord. No. 680 M.C.S.).

On the other hand, suggesting exclusive power in the City Council, see LSA–R.S. 2:135(3); Charter, §§ 3–101 (1), 6–307(4), 6–307(7); Op.Atty.Gen., 1946–48, p. 554. And, on the role of the Mayor, see Charter, §§ 4–206(1) (a), 4–206(1) (i), 6–307(1).

2. See Housing Authority of Opelousas, La. v. Pittman Const. Co., 5 Cir., 264 F.2d 695.

3. There is a general policy of requiring that the award of any contract involving the expenditure of public funds be made through competitive bids. See, e. g., LSA–R.S. 38:2211; New Orleans Charter, §§ 6–301(3), 6–307(5). Logically, the same rule should apply for the award of contracts involving the receipt of funds by a public body, since the ultimate effect on the public fisc is equally important in these instances. Indeed, there are several such provisions. See, e. g., LSA–R.S. 41:1214 (lease of public lands, except oil leases); LSA–R.S. 30:126 (mineral leases); Charter, § 6–305 (disposition of movable property), § 6–306(2) (disposition of immovable property). Nevertheless, exemptions from the requirement have been recognized. See Department of Conservation v. Reardon, 200 La. 491, 8 So.2d 353; Op.Atty.Gen. 1946–48, p. 479. See also, Charter, §§ 6–307(4), 6–307(7). In the particular case of airport concessions, no specific requirement of competitive bidding seems to be made by the state law. See LSA–R.S. 2:81, 2:135(3), 2:604(2).

Though it is of course not necessarily determinative of the question, it may be noted that plaintiff here apparently obtained its original concession for the airport parking operation without competitive bidding.