**Clyde DeLAUGHTER, d/b/a Bogalusa Dairy Products, Plaintiff-Appellee-Cross Appellant,**

v.

**The BORDEN COMPANY, Defendant-Appellant-Cross Appellee.**

**No. 27355.**

United States Court of Appeals, Fifth Circuit.

July 6, 1970.

---

Jones, Circuit Judge, concurred specially and filed opinion. Godbold, Circuit Judge, dissented and filed opinion.

Richard B. Montgomery, Jr., New Orleans, La., Joseph A. Greaves, Stuart S. Ball, George W. McBurney, Chicago, Ill., Milton R. Schroeder, Washington, D. C., H. Blair White, Chicago, Ill., for defendant-appellant-cross-appellee; Montgomery, Barnett, Brown & Read, New Orleans, La., Sidley & Austin, Chicago, Ill., of counsel.

Richard F. Knight, John W. Anthony, Bogalusa, La., for plaintiff-appellee-cross-appellant.

Before JONES, BELL, and GOD-BOLD, Circuit Judges.

BELL, Circuit Judge:

This is an appeal from a judgment in a diversity action entered on a jury verdict finding Borden in violation of the Louisiana Orderly Milk Marketing Act of 1958 and awarding plaintiff De-Laughter treble damages as authorized by the Act. DeLaughter cross-appeals from the failure of the district court to award interest on the trebled portion of the judgment. We reverse on the main appeal and affirm on the cross-appeal.

DeLaughter began operating a dairy plant in Bogalusa, Louisiana in 1945. The dairy showed losses for each year from 1950 to 1956. DeLaughter confined his business to the Bogalusa area until 1956 when he decided to enter the Baton Rouge market. There he encountered previously established competition from Borden and other dairies. To gain a foothold in the Baton Rouge market, DeLaughter introduced a new product offered by no other dairy—milk in one-gallon glass jugs. The gallon jug was attractive to consumers because its price was substantially below the comparable price of a gallon of milk sold in quart or half gallon paper cartons. At one time the gallon jugs constituted 98 per cent of DeLaughter's business and he operated at a profit from 1957 to 1960.

The Milk Marketing Act proscribed the giving or offering of discounts or rebates on milk. Prior to July 30, 1958, the effective date of the Act, Borden paid discounts to selected customers. After the effective date, Borden ceased actually paying the discounts, but informed its customers that it would continue to accrue the discounts on its books while challenging the Act in the courts.

Borden and Foremost filed a declaratory judgment action in the federal courts attacking the constitutionality of the Act and obtained a temporary injunction from a three-judge district court restraining enforcement of the Act until the case was tried on the merits. Borden Company v. McCrory, E.D.La.; 1959, 169 F.Supp. 197. The only party defendant to the declaratory judgment action and the temporary injunction was the Louisiana Commissioner of Agriculture, the official charged with the enforcement of the criminal sanctions of the 1958 Act. The court enjoined enforcement of the Act by the Commissioner and his agents, and further provided " * * * that plaintiffs, the Borden Company and Foremost Dairies, Inc. are not required to comply with the terms and provisions * * * " of the Act.

The injunction was entered on January 13, 1959. The Louisiana Supreme Court thereafter held the Act to be constitutional. Schwegmann Brothers Giant Super Markets v. McCrory, 1959, 237 La. 768, 112 So.2d 606, appeal dismissed for want of substantial federal question, 361 U.S. 114, 80 S.Ct. 207, 4 L.Ed.2d 154 (1959).

On July 6, 1959, the Attorney General of Louisiana filed a motion in the federal district court to dissolve the temporary injunction and to dismiss the declaratory judgment action. On December 21, 1959, the Louisiana Attorney General filed a second motion requesting that the motion to dissolve the injunction and dismiss the action be heard. The case was set down for hearing on February 19, 1960. On February 5, 1960, prior to the dissolution of the injunction, Borden paid cash discounts totalling $84,495.52 to selected customers in the Baton Rouge area. On March 10, Borden paid an additional $3,898.07 in discounts to certain Baton Rouge customers. On March 31, 1960, the three-judge district court dissolved the temporary injunction. After the dissolution of the injunction Borden continued to accrue discounts, but made no payments. The state attorney general brought an action in the state courts to halt this practice and on February 10, 1961, Borden was enjoined from accruing discounts.

Also in January 1960, Borden and other dairies in the Baton Rouge area began to sell milk in gallon jugs. De-Laughter's business began to deteriorate in 1960 and by 1963 he was bankrupt.

The present action was instituted against Borden in a state court alleging that Borden had offered, accrued and paid rebates and discounts in violation of the Orderly Milk Marketing Act. DeLaughter asserted that his business was injured because of these violations and sought treble damages as authorized by the Act. Borden removed the case to the federal district court on the basis of diversity of citizenship and asserted as defenses, among others, that the Milk Act was unconstitutional, and that the action was barred by prescription. The district court granted Borden's motion for summary judgment on the basis of the Louisiana prescription statute. We reversed and remanded for further proceedings. DeLaughter v. Borden Company, 5 Cir., 1966, 364 F.2d 624. The constitutional issue was not considered.

Prior to trial of the present action, Borden renewed its motion to dismiss on the basis that the Milk Act was unconstitutional. Borden also moved to exclude evidence relating to the discounts it paid while the temporary injunction was in effect. Both motions were denied.

The case was tried to a jury and a general verdict was returned in the amount of $280,000. The district court entered judgment in that amount with interest from the date of judicial demand plus $560,000 as the trebled portion.

### I.

The denial of the motion to dismiss on the ground of the alleged unconstitutionality of the Act gives rise to the first assignment of error. Borden's contention was that the Act was a general prohibition barring economically beneficial discounts as well as discounts designed to destroy competition, which could constitutionally be proscribed. It was thus argued that the statute was overbroad, and, as such, arbitrarily interfered with lawful business practices in violation of the due process clause.

Borden focuses on § 940.3 of the Milk Act which is entitled "Disruptive Sales Practices" and subsection (b) thereof which declares it to be a violation of the Act for a distributor "To give or offer any discount or rebates on products sold * * *." However, Borden disregards § 940.10 of the Act which places a gloss on the earlier section as follows: "No milk processor, handler, and/or distributor shall with the intent or with the effect of unfairly diverting trade from a competitor, or of otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, give or offer to give any purchase * * * any rebate, discounts, * * * or any other thing of value." Section 940.3(b) sets out one of several "Disruptive Sales Practices" and the section does provide that it shall be a violation of the Act to give a discount or rebate.[1] Section 940.10 is, however, the operative part of the statute as it relates to discounts and rebates. We do not read § 940.3(b) as standing alone but as a part of the whole Act and thus as being modified by § 940.10.[2] Moreover,

1. § *940.3. Disruptive sales practices.* It shall be a violation of this Act for a processor, handler, distributor, or bulk milk handler to do any of the following acts:

 \* \* \* \* \*

 (b) To give or offer any discount or rebates on products sold, as listed or referred to in Section 940.1.

2. § *940.10. Rebates, Discounts and Other Trade Practices.* "No milk processor, handler, and/or distributor shall with the intent or with the effect of unfairly diverting trade from a competitor, or of

otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, give or offer to give any purchaser of any of the items listed or referred to in Section 940.1 from such processor, handler, and/or distributor, any rebate, discount, free service or services, equipment for rent, any advertising allowance, pay for advertising space, donation, rent on space used by retailer for storing or displaying such milk processor's, handler's or distributor's merchandise, financial aid, free equipment, (except as hereinafter pro-

were it otherwise, § 940.10 as it pertains to discounts and rebates would be wholly redundant as being included in § 940.-3(b). We think this construction is implicit in the opinion of the Louisiana Supreme Court sustaining the constitutionality of the Act. Schwegmann Brothers Giant Super Markets v. McCrory, supra, 112 So.2d at 617.

Under such a construction, Borden's arguments become irrelevant. Indeed, the authorities on which Borden relies pertain only to statutes where the prohibition applied irrespective of anti-competitive motive or effect. See Fairmont Creamery Co. v. Minnesota, 1927, 274 U.S. 1, 47 S.Ct. 506, 71 L.Ed. 893; Commonwealth v. Zasloff, 338 Pa. 457, 13 A.2d 67, 70 (1940); State v. Packard-Bamberger & Co., 123 N.J.L. 180, 8 A.2d 291, 295–296 (1939); San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 217 So.2d 803 (1969). As thus construed, we find the Act within constitutional bounds. Cf. Nebbia v. New York, 1934, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940.

■ This would end the matter of constitutionality were it not for the fact that the court charged the jury only in terms of § 940.3(b). There was no mention of § 940.10 in the charge. The absolute terms of § 940.3(b) were not modified by the terms of § 940.10 that the discount or rebate be given or offered with the intent or effect of unfairly diverting trade from a competitor, or of otherwise injuring a competitor, or of destroying competition, or of creating a monopoly. The objection to the charge was couched in terms of the objection based on the constitutionality of the statute, and while not specific, we think it nevertheless was sufficient. The charge was simply not adjusted to the statute as we construe it to treat § 940.-3(b) as modified by § 940.10. We find this fault in the charge to be such harmful error as to require a new trial.

## II.

The additional assignments of error which present questions likely to recur on a subsequent trial will also be considered.

■ Borden urges that the discounts which are the basis of this action were paid under the protection of the temporary injunction and, consequently, were not violations of the Act. The district court rejected this argument in dismissing Borden's motion to exclude evidence of discounts paid during the period of the injunction. The court reasoned that Borden was only relieved from complying with the Act to the extent that it was made immune to criminal prosecution by the state for violating the Act. DeLaughter was not a party to the injunction litigation and thus, as the district court viewed it, should not be bound by the injunction.

The short answer to Borden's contention is the fact that DeLaughter was not a party to the proceeding in question. Only the Commissioner was enjoined. The language relieving Borden and Foremost from complying with the Act was not in injunctive terms but was more in the nature of a temporary declaratory judgment. It did not purport to and it was not binding on De-Laughter. See Pennsylvania Lumbermens Mutual Fire Ins. Co. v. Barfield, 5 Cir., 1943, 138 F.2d 365, 366.

## III.

■ Borden also contends that the evidence was insufficient on the question of proximate cause. DeLaughter introduced evidence that his dairy lost over one-half of its business in the stores to which Borden had given the discount. The evidence indicated that in February, 1960, the month in which Borden made its first payment of discounts after the passage of the Milk Act, DeLaughter's sales declined dramatically in the stores to which Borden had

---

vided) or any other thing of value. Proof of the giving or offer to give any such thing by a processor, handler,

and/or distributor shall be prima facie evidence of a violation of this paragraph * * *."

given discounts while his sales increased in the non-discount stores. This alone was sufficient evidence to make a jury question but there was additional evidence which we need not detail. Additionally, the evidentiary basis for damages was also sufficient.

The questions regarding the admissibility of evidence have all been considered and are without merit. Likewise, there was no error in the instruction to the jury on damages.

 As to the questions on the appeal and cross-appeal concerning interest, they may or may not recur. We think it proper to reach them, however, since they may possibly recur and answers now may avoid a subsequent appeal. DeLaughter was entitled to interest on the untrebled portion of the judgment from the date of judicial demand if the action falls in the ex delicto class. L.R.S. 13:4203.[3] We agree with the district court that it does.

 We also agree with the district court that interest was not due on the trebled portion of the judgment. Prejudgment interest is somewhat in the nature of a penalty and the statute awarding such interest is to be strictly construed. See Merchant v. Montgomery Ward & Co., La.App., 1955, 83 So.2d 920, 926. We will not construe the prejudgment interest statute to require interest on the trebled portion of the judgment. We do not read Doty v. Central Mutual Ins. Co., La.App.1966, 186 So.2d 328, 333, a case involving the arbitrary non-payment of claims by an insurance company, as requiring a contrary result.

Reversed on the main appeal; affirmed on the cross-appeal.

JONES, Circuit Judge (concurring specially).

I concur in the determination of the majority reversing on the main appeal and affirming on the cross-appeal. I disagree with the majority in giving no

effect to the order of the Court which relieved Borden from compliance with provisions of the statute.

GODBOLD, Circuit Judge (dissenting):

I would affirm the judgment and affirm on the cross-appeal.

There was nothing remotely resembling an objection to the failure to charge on § 940.10. The suit alleged violation of § 940.3 and § 940.10. By motion Borden attacked the constitutionality of the Act and of more than a dozen sections and subsections including § 940.3 and § 940.10.

In his charge the District Judge referred to giving or offering rebates as disruptive trade practices, without referring to the language of § 940.10. Elsewhere he referred to "wrongful conduct as defined by the Orderly Milk Marketing Act" and "violation of the Orderly Milk Marketing Act, particularly that part having to do with the prohibited payment of rebates and discounts." He charged that the Act was constitutional and must be considered by the jury.

The only objection was this:

We also filed a pretrial motion relating to the temporary injunction and we also had a pending motion which was denied at the close of plaintiff's case to dismiss this on the grounds that the Act was unconstitutional.

So, for the record, I would like simply to preserve an objection to those instructions relating to those three items.

The motion at the close of plaintiff's case had been no more illuminating. It was oral and made no mention of § 940.-10. In fact it centered on § 940.3 in this manner:

[Counsel for Borden]:

Now, as I understand their position, and I think there may be an instruction to that affect [sic], although I

3. "Legal interest shall attach from date of judicial demand, on all judgments, sound-ing in damages, 'ex delicto,' which may be rendered by any of the courts."

don't recall at the moment, as I understand their position, the—the reliance which they place now on Act 193 is solely directed to section 943B [sic] of the act which absolutely prohibits discounts. And I think our position in reference to that has been laid out in the briefs. We have urged that it is that—that section which absolutely prohibits discounts for whatever reason is unconstitutional because it is arbitrary, it bears no reasonable relation to the declared purpose of the act, it's arbitrary in prohibiting discounts and fails to require an unlawful intent.

Borden's motion for judgment n. o. v. referred in general terms to the Act's being unconstitutional then dwelt at length on § 940.3.

Borden's position in this court is even more carefully targeted. The first line of text in its brief is this (under "Issues Presented for Review"):

1. Was Section 940.3(b) of the Louisiana Orderly Milk Marketing Act of 1958 constitutional?

The subsequent argument of the point begins this way:

The sole provision of the 1958 Act involved in this case was Section 940.-3(b) which professed to make it unlawful "to give or offer *any* discount or rebates on [milk] products sold * * *." No exceptions whatever were permitted. The prohibition was absolute and unambiguous. (Emphasis in original.)

Whether ingeniously or ingenuously, Borden has leveled its guns at § 940.3 and enjoyed the advantage of a full field of fire on the issue of constitutionality under the absolute prohibition cases referred to by Judge Bell. There is nothing to suggest that Borden wanted to go to the jury on the intent provisions of § 940.10. Everything points the other way, that it sought to win by a ruling of law that § 940.3 was unconstitutional. Having made that choice, in the District

Court and in this court, and having sought all the benefits therefrom, it is not entitled to a new trial on a ground it has eschewed in both courts.