# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 08-452


**CIMAREX ENERGY CO., ET AL.**

**VERSUS**

**KATHERINE D. MAUBOULES, ET AL.**

**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 82679 - I
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.


**AFFIRMED AS AMENDED.**

**Kerry Alan Kilburn**
**Kilburn Law Firm, PLLC**
**6363 Woodway, #750**
**Houston, TX 77057-1796**
**(713) 974-1333**
**Counsel for Intervenor Appellee:**
**Orange River Royalties, LLP**
**Coyote Ventures, Ltd.**
**Mission Royalty Income 2002-A, LP**

**Homer Edward Barousse, Jr.**
**Barousse & Craton**
**P. O. Box  1305**
**Crowley, LA 70527-1305**
**(337) 785-1000**
**Counsel for Defendant Appellee:**
**Florence Mauboules**

**Don Ray Beard**
**Attorney at Law**
**318 St. Charles St.**
**Baton Rouge, LA 70802**
**(000) 000-0000**
**Counsel for Plaintiff Appellant:**
**Cimarex Energy Co.**
**Ceniarth, Ltd.**

**Robert L. Cabes**
**Milling, Benson, et al**
**P. O. Box 51327**
**Lafayette, LA 70505-1327**
**(337) 232-3929**
**Counsel for Defendant Appellant:**
**Palace Exploration Co.**

**William Howard Collier**
**Ringuet, Daniels & Collier**
**P. O. Box 52647**
**Lafayette, LA 70505**
**(337) 232-0002**
**Counsel for Intervenor Appellee:**
**Mission Royalty Income 2002-A, LP**
**Orange River Royalties, LLP**
**Coyote Ventures, Ltd.**

**Margaret D. Swords**
**Longman Russo**
**P. O. Drawer 3408**
**Lafayette, LA 70508-3408**
**(337) 262-9000**
**Counsel for Defendant Appellee:**
**Patrick and Kathy Mauboules**

**John Weir Grant**
**Attorney at Law**
**P. O. Drawer 52604**
**Lafayette, LA 70505-2604**
**(337) 234-3777**
**Counsel for Defendant Appellee:**
**Miocene Oil & Gas, Inc.**

**Francis X. Neuner, Jr.**
**Laborde & Neuner**
**P.O. Box 52828**
**Lafayette, LA 70505-2828**
**(337) 237-7000**
**Counsel for Intervenor Appellee:**
**Orange River Royalties, LLP**

**Joe Barrelle Norman**
**Liskow & Lewis**
**701 Poydras St., #5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**Counsel for Plaintiff Appellant:**
**Ceniarth, Ltd.**
**Cimarex Energy Co.**

**Randall Charles Songy**
**Onebane Law Firm**
**P. O. Box 3507**
**Lafayette, LA 70502-3507**
**(337) 237-2600**
**Counsel for Other:**
**Louisiana Oil and Gas Association**

**George Jeanmard Tate**
**Attorney at Law**
**P. O. Box 817**
**Abbeville, LA 70511-0817**
**(337) 893-8335**
**Counsel for Defendant Appellant:**
**Zeneco, Inc.**

**Steven Bernard Rabalais**
**Rabalais, Hanna**
**701 Robley Drive, #210**
**Lafayette, LA 70503**
**(337) 981-0309**
**Counsel for Defendant Appellee:**
**Essex Royalty Joint Venture II**

**Cheryl Mollere Kornick**
**Attorney at Law**
**701 Poydras Street, Suite 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**Counsel for Plaintiff Appellant:**
**Ceniarth, Ltd.**
**Cimarex Energy Co.**

**J. Clemille Simon**
**Attorney at Law**
**P. O. Box 52242**
**Lafayette, LA 70505**
**(337) 232-2000**
**Counsel for Intervenor Appellee:**
**Ereunaco Oil**

**Barry Louis Domingue**
**Simon Law Offices**
**P. O. Box 52242**
**Lafayette, LA 70505**
**(337) 232-2000**
**Counsel for Intervenor Appellee:**
**Ereunaco Oil**

**Michael Howard Landry**
**Attorney at Law**
**P. O. Box 1368**
**Crowley, LA 70527-1368**
**(000) 000-0000**
**Counsel for Defendant Appellee:**
**Jack W. Larimer**
**Cimarex Energy Co.**
**Floyd Trahan**
**Valerie Mocek Trahan**

**Kyle M. Bacon**
**Longman Russo**
**P. O. Box 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendant Appellee:**
**Patrick and Kathy Mauboules**

**Matthew R. Lynch**
**Milling, Benson, Woodward**
**P. O. Box 51327**
**Lafayette, LA 7005-1327**
**(337) 233-3929**
**Counsel for Defendant Appellant:**
**Palace Exploration Co.**

**Jed Mestayer**
**Laborde & Neuner**
**P. O. Drawer 52828**
**Lafayette, LA 70705-2828**
**(337) 237-7000**
**Counsel for Intervenor Appellee:**
**Orange River Royalties, LLP**

**Collette Ross Gordon**
**Liskow & Lewis, PLC**
**701 Poydras St., Suite 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**Counsel for Plaintiff Appellant:**
**Cimarex Energy Co.**
**Ceniarth, Ltd.**

**Diversified Energy Investments**
**Jack W. Larimer**

**John Michael Gottesman**
**Essex Royalty Joint Venture II**

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

This appeal arises from an Amended Final Judgment by the Fifteenth Judicial District Court, in which the trial court found that Appellants[1] (hereinafter collectively referred to as "Cimarex") brought a concursus proceeding, under La.Code Civ.P. art. 4658, without having a legitimate basis to do so, thereby unreasonably withholding royalty payments from Appellees[2] (hereinafter collectively referred to as "Orange River"). A review of the facts leading up to this appeal is instructive.

In 1997, Katherine Daigle Mauboules and other members of her family sold royalty interests in their land to Ereunao Oil & Gas, Inc. (hereinafter "Ereunao"). This royalty deed contained an "Off Tract Production Clause" that would later become the source of Mauboules' assertion that she might be entitled to the royalty interests she had sold to Ereunao. Years after Ereunao's purchase of royalty interest from Mauboules, Orange River made three different purchases of royalty interests from Ereunao's assignees, Lawrence and Lorena Brock, in April 2004, August 2004, and February 2005.

Meanwhile, during February of 2003, Cimarex acquired a mineral lease from Maboules and drilled a well, which began production in January 2004. The Cimarex lease agreement had been reached after a year of unsuccessful negotiations with Mauboules and only after the addition of three key provisions:

---

[1]Appellants-Defendants in Reconvention are: Cimarex Energy Co., Ceniarth, Ltd., Palace Exploration Company and Zeneco, Inc. (f/k/a RZ, Inc. of Oklahoma).

[2]Appellees-Plaintiffs in Reconvention are: Orange River Royalties, LLP; Mission Royalty Income 2002-A, L.P.; MRHC, LLC; Charles P. Torrey, Jr.; Royalty Quest, LLC; Forst Worth Operating Company, L.L.C.; Richard Martter; Coyote Ventures, LTD, and Essex Royalty Joint Venture, II.

(1) Cimarex would pay Kenneth Privat (hereinafter "Privat"), Maboules' attorney, $7,500.00 in legal fees to offset future legal expenses incurred by filing suit against a royalty purchaser known as Ereunao Oil & Gas, Inc. et. al. ; (2) Cimarex would place the royalties in suspense until the suit against Ereunao was over; and (3) Cimarex would pay Maboules $75,000.00 if (a) her lawsuit against Ereunao was unsuccessful and (b) a successful well was drilled and the well reached 150% payout.

On March 26, 2004, Privat sent Cimarex a letter, claiming that Ereunao's royalty interest had prescribed. In a follow-up phone conversation, Privat spoke to Cimarex attorneys and asserted that a clause in the Maboules-Ereunao deed might have been procured by fraud. On June 9, 2004, Cimarex advised Orange River that Cimarex would be suspending Orange River's royalty payments. Later, on November 16, 2004, Orange River's attorney, Kerry Kilburn (hereinafter "Kilburn") made written demand for payment. In his letter, Mr. Kilburn noted that Orange River is a, "good faith purchase[r] relying on the public record for the validity of [its] title and there can be no reasonable claim against [Orange River] by the Mauboules Family members." On December 20, 2004, a little over a month after Orange River's demand, Cimarex filed the concursus proceeding which forms the central focus of this appeal.

In that proceeding, the trial court made a factual finding that Cimarex had no legitimate basis on which to file a concursus and rendered judgment, awarding damages to Orange River. Cimarex appeals, asserting five assignments of error.

**ASSIGNMENTS OF ERROR:**

1.    Must a stakeholder in a concursus proceeding have a legitimate basis to bring the concursus proceeding?

2

2. Does La.Code Civ.P. art. 4658 provide stakeholders in a concursus with absolute immunity from liability related to alleged nonpayment of funds deposited into the registry of the court?

3. Did the trial court correctly calculate "double" damages for purposes of Mineral Code Article 212.23(C)?

4. Did the trial court correctly calculate the date from which judicial interest became due on statutory damages awarded pursuant to Mineral Code Article 212.23(C)?

5. Must a royalty owner provide notice to the working interest owner before the royalty owner may seek a judicial award of penalties under Mineral Code Article 212.23?

**ASSIGNMENT OF ERROR #1:**

Cimarex asserts that Mauboules' claim against Ereunao was sufficient to form the legitimate basis of a concursus proceeding, which would prevent Orange River from receiving its royalty payments timely. We disagree.

"The purpose of a concursus proceeding is equitable in nature, meaning to protect a person finding himself in possession of money which is not his from having to referee the rights of rival claimants and risk paying same to the wrong party." *Bank of Sunset & Trust Co. v. A.J. Charlot*, 614 So.2d 1386, 1388 (citing *Transo Investment Corporation v. Oakley*, 37 So.2d 560 (La.App. 2 Cir. 1948). Furthermore, concursus proceedings developed "in order to curtail lengthy, vexatious and expensive litigations." Leon Sarpy, *Concursus: Interpleader in Louisiana*, 35 Tul. L. Rev. (1961). For that reason, our supreme court has encouraged the institution of concursus proceedings, even when the competing claim is "an inchoate interest in. . . royalties," but only if the plaintiff "*actually*

3

fear[s] that the payment [to another] might be hazardous." *Irion v. Standard Oil Co. of Louisiana*, 199 La. 363, 371, 6 So.2d 143, 146 (1942) (emphasis added). The requirement of an *actual* concern exists, lest the concursus itself become "vexatious," thereby re-creating the problem it was designed to remedy.

The trial court found that Cimarex failed to meet the minimum threshold for initiating a concursus proceeding. Cimarex's concursus proceeding was orchestrated as a condition to Mauboules granting Cimarex a mineral lease, rather than as a result of an *actual* concern about a competing claim.

This case is similar to another case involving a baseless concursus proceeding, that being *Bank of Sunset & Trust Co. v. A.J. Charlot,* 614 So.2d 1386 (La.App. 3 Cir. 1993). In *Bank of Sunset & Trust Co.*, this court found that a bank presented with a foreign judgment that had not been made executory in Louisiana was not presented with a legal competing claim, but rather was confronted with "nothing more than a man off the street. . .who said, I have a claim. . .." *Id.* at 1388. In that case, we noted that "with a little cursory examination and investigation. . .the bank would have alerted itself. . .that. . .the judgment. . .[was] nothing more than a man off the street." We then defined the "threshold element for the initiation of a concursus proceeding" to be "the existence of at least two persons who have competing or conflicting claims to money." *Id.* at 1388-89.

Cimarex points out, in brief, that it was advised to institute the concursus by its attorney, an oil and gas lawyer with over thirty years experience practicing law. Cimarex asserts that their attorney had no way of "going behind" the Maboules' claim to test its legitimacy. However, the record indicates that Cimarex did not advise its attorney of the special agreement with Mauboules, nor of the extensive history with Mauboules' amorphous claim. The "clean hands doctrine" states: "He

4

who comes into a court of equity must come with clean hands."

> This doctrine universally affects the entire administration of equity jurisprudence as a system of remedies and remedial rights.

> It is likewise fundamental that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. One who has resorted to injustice, unfairness and unrighteous dealing, which it is the purpose of courts of equity to supress, will appeal in vain, even though in his wrongdoing he may have kept himself strictly within the law. Manifestly, under this maxim any act which would be condemned and pronounced wrongful by honest and fair-minded men must be held sufficient to make the hands of one who seeks equity unclean.

*City of New Orleans v. Levy*, 233 La. 844, 864, 98 So.2d 210, 218 (1957). Cimarex may have sought to keep itself "strictly within the law" by seeking an attorney's opinion which would advise the filing of concursus proceedings. However, Cimarex cannot expect to shield itself with an attorney's opinion made with incomplete information.

Cimarex repeatedly argues in brief that the possibility that a claim may be asserted against it by Mauboules justifies non-payment. Nowhere does Cimarex suggest how the Mauboules' assertion could present a claim that would challenge, much less defeat, Orange River's royalty interest and the public records doctrine. Cimarex argues that Louisiana has a strong concursus doctrine. This is true. It is also true that Louisiana has a strong public records doctrine.

The public records doctrine and its basic principles of recordation are set forth in La.Civ.Code art. 3338[3] and 3342, "which protect third persons from the

_____

[3] Louisiana Civil Code Article 3338 -

The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:

effect of unrecorded instruments affecting real estate and attempts to vary the terms or statements of fact in recorded instruments." 1 Peter S. Title, <u>Louisiana Real Estate Transactions</u> § 8:26 (2d ed. 2008). A cursory examination of the information already in Cimarex's possession would have shown that any claim by Mauboules would not affect Orange River's royalty interests because Orange River was a third party which relied on the public records[4] and acquired "an interest in an immovable [and] is [therefore] protected from the effects of the nullity or dissolution of a contract that adversely affects [its] interest." *Id.* By contacting Cimarex with claims of possible fraud and prescription against Ereunao, Mauboules, through her attorney, Privat, was attempting to do precisely that which La.Civ.Code art. 3342 prohibits. Louisiana Civil Code Article 3342 specifically says,

> A party to a recorded instrument may not contradict the terms of the instrument or statements of fact it contains to the prejudice of a third person who after its recordation acquires an interest in or over the immovable to which the instrument relates.

It follows that in order to justify its defense, Cimarex must advance a reasonable basis to fear that payment to Orange River would not be protected by the public records doctrine. We have searched the voluminous record for such a theory of justification. We have found none. We asked for such justification at oral

---

(1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
(2) The lease of an immovable.
(3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
(4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

[4] The Louisian Supreme Court, in *Brown v. Sugar Creek Syndicate*, 195 La. 865, 892, 197 So.2d 583, 592 (1940), noted that, "royalty owners who acquired their rights on the faith of the public records. . .are obviously protected [from claims of landowners that recorded agreement was invald]."

argument. None was forthcoming. If such a theory exists, it has not yet been brought to the attention of this court. The absence of such an explanation is fatal to the defense. Had Mauboules not sold her royalty interests and had it not been a matter of public record, the Mauboules claim, however weak and ill articulated, might have formed a reasonable basis for the concursus. However, that is not what has occurred, and it is not the situation presented to this court. This court must face the issue of whether any reasonable basis for non-payment to Orange River ever existed. We have found none.

Thus, even if Mauboules had an ironclad claim against Ereunao in terms of the agreement between those two parties, it would have had no effect, whatsoever, on Orange River. In order to file a valid concursus, Cimarex needed to show that Mauboules had a competing claim against Orange River. They make no attempt to do this. The Orange River claim is fully supported by the public records and the public records doctrine. Nowhere in the record before us does anyone make any assertion which could form a legal challenge to Orange River's rights. While this leaves the possibility that the Mauboules may have a damage claim against Ereunao for fraud or something else, Mauboules has no claim for the money that is due Orange River. Mauboules, at best, indicates that she may make a claim of some sort against an ancestor in title. This cannot form the basis of a valid concursus in this case.

"Appellate courts review the trial court's findings of fact under a 'manifest error' or 'clearly wrong' standard." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). The trial court made a factual finding that Cimarex failed to meet the threshold element required to institute a concursus . After reviewing the facts in the  record, we find no manifest error in this instance.

7

**ASSIGNMENT OF ERROR #2:**

Cimarex asserts that the trial court erred in awarding Orange River damages pursuant to La.R.S. 31:212.23(C), because La.Code Civ.P. art. 4658 provides immunity to all who institute concursus proceedings. We disagree.

Louisiana Code of Civil Procedure Article 4658 provides:

> With leave of court, the plaintiff may deposit into the registry of the court money which is claimed by the defendants, and which plaintiff admits is due one or more of the defendants.
>
> When sums of money due one or more of the defendants accrue from time to time in the hands of the plaintiff after the institution of the proceeding, with leave of court he may deposit the money as it accrues into the registry of the court.
>
> After the deposit of money into the registry of the court, *the plaintiff is relieved of all liability* to all of the defendants for the money so deposited. (emphasis added)

Yet, a party who institutes a concursus when it knows or should know that the claim he is presented with has no legal efficacy, at least in terms of a competing claim, cannot invoke the protection provided for in La.Code Civ.P. art. 4658, thus impairing the rights of a third party in good faith. To allow concursus to be abused in this way would make a mockery of the judicial system, undermine Louisiana's public records doctrine, and affect the stability of contracts made in this state.

As decided by this court in *Bank of Sunset & Trust Co.,* 614 So.2d 1386*,* where the plaintiff fails to meet the threshold for initiating a concursus proceeding, damages may be awarded, and the immunity provided for in La.Code Civ.P. art. 4658 is not available. In *Bank of Sunset & Trust Co.*, we awarded damages for the frivolous appeal of a trial court's dismissal of a baseless concursus. Likewise, we feel it would be appropriate here to give full meaning to the statutory remedy

8

provided for in the Mineral Code La.R.S. 31:212.23(C).

Louisiana Revised Statutes 31:212.23(C) provides:

> If the obligor fails to pay and fails to state a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount due, legal interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay.

Cimarex suspended royalty payments to Orange River on March 26, 2004, long before instituting the concursus and months before notifying Orange River of the suspension. The trial court made a factual finding that Cimarex (1) failed to make timely payments, (2) failed to pay in response to the notice of failure to pay[5], and (3) failed to state a reasonable cause for failure to pay. Because Cimarex could not state a reasonable cause for and withholding royalty payments from Orange River or for instituting a concursus proceeding, Cimarex is subject to damages as described above. Finding no manifest error in the trial court's determination, we affirm the trial court's ruling that damages should be awarded under La.R.S. 31:212.23(C).

**ASSIGNMENT OF ERROR #3:**

Next, Cimarex challenges the trial court's award of damages as being in excess of the amount contemplated by La.R.S. 31:212.23(C), which provides, in pertinent part, that "the court may award as damages double the amount due . . .." We find this challenge has no merit.

The royalties owed to Orange River are not damages but merely a sum of money that would be owed to Orange River in any event, as Orange River is the rightful owner of those royalty interests. The Mineral Code, as cited above, plainly

---

[5]Orange River gave Cimarex written notice of failure to pay on November 16, 2004.

states that the court may award double the amount due *as damages*. Thus, the obligor, in addition to owing the unpaid royalties, would pay an additional sum *as damages* to the obligee. This method of calculation was affirmed in *Wegman v. Central Transmission, Inc.,* 499 So.2d 436 (La. App. 2 Cir. 1986), when the Second Circuit Court of Appeal of Louisiana noted that the trial judge was correct in "doubling the damages and adding that sum to the amount of royalties due." *Id.* at 451. Accordingly, we affirm the trial court's calculation of damages.

**ASSIGNMENT OF ERROR #4:**

Cimarex asserts the trial court erred in finding that interest on the damages awarded under La. R.S. 31:212.23(C) began to accrue from the date of judicial demand, rather than from the date of judgment. We disagree.

Cimarex argues that the trial court's decision was contrary to law. It cites minimal authority for its position, namely *Wegman*, 499 So.2d 436, and *DeLaughter v. Borden Co.*, 431 F.2d 1354 (La.App. 5 Cir. 1970). In *Wegman*, our second circuit did not speak to the date of when interest on statutory damages begins to accrue, it merely upheld the lower court's judgment awarding damages in that case. Thus, Cimarex's reliance on *Wegman* is unfounded.

In *DeLaughter*, the U.S. Fifth Circuit recognized that interest was not necessarily owed on the trebled portion of a judgment in that particular case under La.R.S. 13:4203. Like *Wegman*, the *DeLaughter* court did not speak to the point in time at which interest begins to accrue on statutory damages awarded. As such, as with *Wegman*, Cimarex's reliance on *DeLaughter* is misguided.

We do note that there are instances where interest on statutory damages does not begin to accrue until the date of judgment. For example, *see Sharbono v. Steve Lang & Sons Loggers*, 97-110 (La. 7/1/97), 696 So.2d 1382, where our

supreme court discussed interest on statutory penalties awarded in the workers'

compensation setting.

The case before us is in a different setting than that of workers'

compensation. Here, we are dealing with statutory damages awarded when a party

breaches a contract. Cimarex, as an obligor, failed to pay its obligee timely.

Generally, "[i]n contract law, the right to damages for delay accrues on the day of

the demand." Franco Ferrari, Comparative Ruminations on the Foreseeability of

Damages in Contract 53 La. L. Rev. 1257, 1260 (1993).

> In French law, this principle has resulted in the
> imposition of the *mise en demeure,* or formal "putting in
> default" of the obligor, as a necessary prerequisite to the
> recovery of damages and interest for any alleged delays
> in performance. The same concept appears in
> La.Civ.Code art. 1989, which provides that, "damages
> for delay in the performance of an obligation are owed
> from the time the obligor is put in default."

Nancy Scott Degan & Kent Andrew Lambert, A Practical Guide to Commercial

Damages in Louisiana, 44 Loy. L. Rev. 257, 260 (1998). The drafters of

Louisiana's Mineral Code incorporated the concept of putting the obligor in default

by making written notice of failure to pay a prerequisite to receiving damages in

La.R.S. 31:212.21, which states:

> If the owner of a mineral production payment or a
> royalty owner other than a mineral lessor seeks relief for
> the failure of a mineral lessee to make timely or proper
> payment of royalties or the production payment, he must
> give his obligor written notice of such failure as a
> prerequisite to a judicial demand for damages.

We find the requirement of written notice instructive in interpreting the award of

interest on damages under La.R.S. 31:212.23(C), which states that the court may

award "legal interest on [damages] from the date due. . . ."

In accordance with the principles of law cited above, we find that the "date due" for damages for delayed performance is the date of written demand.  In making this decision, we recognize that "[p]rejudgment interest, even when available, is likewise unlikely to fully compensate the aggrieved litigant for deprivation of capital or resources over the tenure of protracted commercial litigation."  Nancy Scott Degan & Kent Andrew Lambert, A Practical Guide to Commercial Damages in Louisiana, 44 Loy. L. Rev. 257, 260 (1998).

Given the above, we find that the assignment raised by Cimarex is without merit. Further, while we did find that the interest on the statutory damages could have potentially begun to accrue from the date of written demand rather than the date of judicial demand, Orange River did not appeal this issue. Therefore, as this court can only adjudicate issues before it, we merely uphold the trial court's award of interest as accruing on the awarded statutory damages from the date of judicial demand.

**ASSIGNMENT OF ERROR #5:**

Finally, Cimarex asks this court to dismiss the trial court's award of damages to the Miocene Group, due to Miocene's failure to give written notice of failure to pay royalties before making judicial demand. This court takes notice of the fact that all members of the Miocene Group, save Essex Royalty Joint Venture, II (hereinafter "Essex"),  have settled out of court.

La.R.S. 31:212.21 clearly requires a royalty owner other than the mineral lessor to "give his obligor written notice of such failure [to pay royalties] as a prerequisite to a judicial demand for damages." We find that Essex did give proper notice to its obligor, as required by the Mineral Code in La.R.S. 31:212.21, when Essex's attorney, John Grant, emailed Cimarex on July 23, 2004, urging them to

12

forego the filing of a concursus and "instead distribute the royalty to the rightful owners."[6] We find such notice sufficient to meet the requirements of the Mineral Code. The trial court's award of damages to Essex is hereby affirmed.

**ANCILLARY ISSUE #1:**

Two defendants in reconvention, Zeneco, Inc. (hereinafter "Zeneco") and Palace Exploration Company (hereinafter "Palace"), assert that they should not be included in the trial court's judgment, since there was no "independent negligence" on their part and, furthermore, there is no privity of contract between them and Orange River. We disagree, finding that non-lessor mineral royalty owners have a cause of action against lessees and sublessees for non-payment of royalties[7].

The Mineral Code clearly contemplates a situation in which someone, other than the lessor, might seek payment of royalties from a lessee. La.R.S. 31:212.21[8]. Though Palace and Zeneco are sublessees and not lessees, the Mineral Code has also resolved privity of contract issues concerning sublessees. In the past, Louisiana jurisprudence held that there was no privity of contract between sublessees or assignees and the original lessor. *See Berman v. Brown*, 224 La. 619, 70 So.2d 433 (La.1953); *Broussard v. Hassie Hunt Trust*, 231 La. 474, 91 So.2d

---

[6] In *CLK Co., L.L.C. v. CXY Energy, Inc.*, 07-834 (La.App. 3 Cir. 12/19/07), 972 So.2d 1280, this court found that letters requesting acknowledgment of assignment of royalty interest, but not demanding payment of royalties were insufficient and did not meet the statutory requirement of notice in La. R.S. 31:212.21. Appellees in that case were not entitled to recover double damages under Louisiana's Mineral Code.

[7] Other cases have already recognized that non-lessor mineral royalty holders may have a cause of action against lessees for non-payment or improper payment of royalties, following the assignment by lessor of mineral royalty interests to others. *Hanks v. Wilson*, 93-554 (La.App. 1 Cir. 3/11/94), 633 So.2d 1345.

[8] Louisiana Revised Statutes 31:212.21 - If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or proper payment of royalties or the production payment, he must give his obligor written notice of such failure as a prerequisite to a judicial demand for damages.

762 (La.1956). However, "[w]ith the adoption of the Mineral Code in 1975, a prime lessor is now allowed to demand performance of the sublessee directly." Angela Jeanne Crowder, *Take-or-Pay Payments and Settlements - Does the Landowner Share?,* 49 La. L. Rev. 921, 926 (1989). Louisiana Revised Statutes 31:128 states:

> To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations.

Palace and Zeneco are sublessees of Cimarex because Cimarex retained some interest in the lease contract. Palace took only a twenty-five (25%) percent interest in the lease, and Zeneco took a one point two five (1.25%) percent interest.[9] "Under the sublease, the sublessee expressly contracts to assume certain obligations under the lease, including the payment of royalties . . ..Therefore, the lessor has a right of action against [the sublessee] directly if royalties are not paid when due." Angela Jeanne Crowder, *Take-or-Pay Payments and Settlements - Does the Landowner Share?,* 49 La. L. Rev. 921, 926 (1989). In this case, the lessor does not own the mineral rights, as contemplated by the statute above.[10] However, just as the sublessee would, to the extent of interest acquired, be responsible to the lessor, he is likewise responsible to assignees of the lessor's mineral royalty interests. The mineral royalty owner is simply a subsequent obligee or "creditor" of the sublessee. Palace and Zeneco were put on notice by the

---

[9]"The cases are clear that where the lessee retains some interest in the lease, the contract is one of sublease." *Brown v. Mayfield*, 488 So.2d 322, 324 (La.App. 3 Cir. 1986).

[10]"Under the Mineral Code, as well as under the Civil Code, 'mineral rights' form a component part of the ownership of land, that is, the right to search for and reduce minerals to possession belongs to the owner of the ground. . .The mineral rights, however, are separable components of the ownership of land: the owner of the ground may segregate the mineral rights from the ownership of land and either retain them himself or convey them to another person." A.N. Yiannopoulos, Personal Servitudes § 63 (4th ed. 2008).

public records, in which Orange River's mineral royalty interest was duly filed for record, that Orange River was the rightful owner of the mineral royalties at issue.

In addition, the Louisiana Code of Civil Procedure provides that a mineral royalty owner may pursue action in his own right. Louisiana Code of Civil Procedure Article 3664 states that "[t]he owner of a mineral right may assert, protect, and defend his right in the same manner as the ownership or possession of other immovable property, and without the concurrence, joinder, or consent of the owner of the land or mineral rights." Therefore, even without being party to the lease giving rise to mineral royalty payments, mineral royalty owners may protect their rights.

**ANCILLARY ISSUE #2:**

Zeneco argues that the trial court erred in calculating the extent of Zeneco's interest in Cimarex's mineral lease as five (5%) percent. Zeneco points out that it only has a five (5%) percent interest in Palace's twenty-five (25%) percent interest in Cimarex's mineral lease. Thus, Zeneco should only be held responsible for 1.25% of the judgment. We agree, finding that this assertion has merits based on the facts in the record. We hereby amend the judgment of the trial court accordingly.

**ORANGE RIVER APPEAL:**

Orange River, in its reply brief, appeals the trial court's denial of consequential damages for Orange River's inability to sell its royalty interests during the concursus proceedings brought by Cimarex. We find no merit in this appeal.

"When a judgment is silent as to part of the relief requested, the judgment is deemed to have denied that relief." *Duhon v. Lafayette Consol. Govt.*, 05-657, p.

15

11 (La.App. 3 Cir. 12/30/05), 918 So.2d 1114, 1120, *citing Guaranty Bank and Trust Co. of Alexandria, LA v. Carter*, 394 So.2d 701 (La.App. 3 Cir.), *writ denied*, 399 So.2d 599 (La.1981). Whether to award consequential damages for loss of profits due to missed sales is reviewed by the manifestly erroneous standard of review. *Evangeline Farmers Cooperative v. Fontenot*, 565 So.2d 1040 (La.App. 3 Cir. 1990).

In the case before us, the trial court awarded Orange River considerable statutory damages. Thus, it follows that should the trial court have felt it necessary to award consequential damages to Orange River, it would have awarded those damages. Given the discretion given to the finder of fact in awarding damages and, further, the amount of damages already awarded by the trial court to Orange River in the form statutory damages that are double the damages due. We find no error in the trial court's decision to deny Orange River the consequential damages it claims to have lost due to missed sales of royalty interests. Therefore, we affirm the trial court's judgment in this regard.

**CONCLUSION:**

We amend the trial court's judgment with respect to Zeneco's percent interest in the Cimarex mineral lease and affirm in all other respects. Costs of this appeal are to be paid by Appellants.

**AFFIRMED AS AMENDED.**